UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ALLSTATE INSURANCE COMPANY, *et al.*, :
:
                        Plaintiffs, :
:      **MEMORANDUM AND ORDER**
              -against-           :      06-CV-1316 (DLI) (SMG)
:
AHMED HALIMA, M.D., *et al.*, :
:
                        Defendants. :
-----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

        Plaintiff Allstate Insurance Company and the remaining plaintiffs ("Allstate" or "Plaintiffs") are nationwide automobile insurers. Plaintiffs allege that defendants conspired to abuse New York's No-Fault laws, N.Y. Ins. Law §§ 5101-109, and the regulations promulgated under those laws, 11 N.Y.C.R.R. § 65.3-.1 to -.20 (collectively, "New York's No-Fault Laws"), to obtain payment for diagnostic tests that were medically unnecessary. The diagnostic tests at issue comprise current perception tests ("CPT Tests") and digital range of motion tests ("J-Tech Tests"). Plaintiffs seek damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c)-(d), and under state law claims of fraud and unjust enrichment. Additionally, Plaintiffs seek a declaration that they are not liable for any unpaid charges under the Declaratory Judgment Act, 28 U.S.C. § 2201.

        The complaint groups Defendants into four categories: (i) the doctors and chiropractors at clinics who treat parties insured by Plaintiffs for injuries sustained in automobile accidents ("Prescribing Doctors"), (ii) Ahmed Halima, a doctor who purportedly reviews the CPT and J-Tech tests and interprets them for the Prescribing Doctors, (iii) Diagnostics Medical Testing, P.C. ("DMT"), a professional medical corporation that submits bills for the tests to Allstate, and

(iv) several individuals who are nonphysicians and the corporate entities, which, collectively, own and operate DMT ("Management Defendants"). Defendants Jake Palter a/k/a Jake Palterovich and Health Care Data Processing, Inc. (the "Palter Defendants") fall into the Management Defendants category. While Plaintiffs have settled with several Defendants, the Palter Defendants remain in the action and have filed a motion to dismiss under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Plaintiffs oppose this motion in its entirety. For the reasons set forth more fully below, the motion is denied.[1]

## BACKGROUND

The facts as described below are drawn from the complaint, which the court accepts as true solely for purposes of this motion to dismiss. In accordance with New York's No-Fault Laws, Plaintiffs must pay for medically necessary diagnostic tests. *See* N.Y Ins. Law §§ 5101-109. These benefits may also be assigned for payment of services rendered to qualified "providers of health care services." *See* 11 N.Y.C.R.R. § 65-3.11. A proper assignment requires that the health care provider submit either (1) "a properly executed Authorization to Pay Benefits" or (2) "a properly executed assignment on . . . the prescribed Verification of Treatment" using New York State Form NF-3. *Id*. The services performed must be "*necessary for the treatment of the injuries sustained.*" *Id.* at § 65-3.16(6) (emphasis added). Within thirty days of receiving a valid claim, an insurance company must pay the claim in full or incur interest charges at two percent per month. *Id.* at §§ 65-3.8 to 3.9. Only properly licensed professional corporations—those owned and operated by medical professionals—are eligible for

---

[1] By an order dated September 30, 2008, the court consolidated the instant motion with Plaintiffs' motion for partial summary judgment against defendants Halima and DMT (Docket Entry No. 127). Plaintiffs have since indicated that settlement with Halima and DMT is likely. (*See* Status Rep. Jan. 16, 2009, Docket Entry No. 165.) As such, the court terminates the motion for partial summary judgment without prejudice and with leave to renew or reinstate should the parties fail to settle.

reimbursement under New York's No-Fault Laws. *See* N.Y. Bus. Corp. Law §§ 1507-108; *State Farm Mut. Auto. Inc. Co. v. Mallela*, 4 N.Y.3d 313, 321-22 (2005) (holding that medical professional services corporations must be owned and operated solely by licensed physicians). The purpose of this requirement is to discourage nonphysicians from fraudulently taking advantage of New York's No-Fault Laws. *See Mallela*, 4 N.Y.3d at 320 n.2 (accepting the finding by New York's Superintendent of Insurance that this requirement was "promulgated . . . to combat rapidly growing incidences of fraud in the no-fault regime . . . identified as correlative with the corporate practice of medicine by nonphysicians").

Plaintiffs allege that, on or around June 2001, Defendants began a scheme to defraud Plaintiffs of over one million dollars by submitting thousands of claims for medical services and diagnostic tests that were medically unnecessary. (Am. Compl. ¶¶ 29-33.) According to Plaintiffs, Management Defendants, including the Palter Defendants, were central to this fraudulent scheme. Because Management Defendants are nonphysicians but wanted the professional corporation to be eligible under New York's No-Fault Laws, Plaintiffs allege that Management Defendants used Dr. Halima as a figurehead for the professional corporation when, in fact, Management Defendants are the true owners, managers and operators of the professional corporation. (*Id.* ¶¶ 89-92.)

With the professional corporation licensed to perform services under New York's No-Fault Laws, Management Defendants were able to perpetrate their scheme. First, Prescribing Doctors authorized the CPT and J-Tech tests using boilerplate letters of medical necessity that attested to the diagnostic value of these tests.[2] (*Id.* ¶ 29.) Management Defendants, through the

---

[2] Plaintiffs allege that these letters were boilerplate because invariably they were undated, unsigned or signed with irregular signatures and contained identical language that never referred to a patient's specific condition. (*Id.* ¶¶ 62-63.)

3

professional corporation, then submitted these letters to Plaintiffs along with reports by Dr. Halima and bills for the performance and interpretation of these tests. (*Id.* ¶¶ 30-31.) Plaintiffs claim, however, that Defendants knew that the CPT and J-Tech tests had little-to-no diagnostic value and were ordered solely to take advantage of New York's No-Fault Laws.

According to Plaintiffs, the CPT and J-Tech were medically unnecessary for two reasons. First, Plaintiffs challenge the independent diagnostic value of these tests. (*Id.* ¶¶ 54-58, 70-72.) Second, even if these tests have minimal diagnostic value, Plaintiffs allege that nearly every insured customer that the Management Defendants' allegedly tested had received, at or around the same time, equally informative diagnostic tests—Nerve Conduction Velocity ("NCV"), Electromyography ("EMG"), and Magnetic Resonance Imaging ("MRI") tests and manual range of motion tests—thereby rendering the CPT and J-Tech tests superfluous. (*Id.* ¶¶ 43, 69.) Plaintiffs further allege that Defendants submitted forms using incorrect billing codes to "materially misrepresent the nature of the tests purportedly performed . . . ." (*Id.* ¶ 3.) Moreover, with respect to the J-Tech tests, in addition to being medically unnecessary, Plaintiffs allege that Defendants submitted bills for fourteen separate tests when, under New York law, several of these tests should have been "bundled" into tests of individual "trunk section[s]." (*Id.* ¶¶ 78-80.) Plaintiffs have presented a representative sample of 916 allegedly fraudulent reimbursement claims submitted by the Palter Defendants to Plaintiffs. (*Id.* Ex. A, Ex. B.) Additionally, Plaintiffs have submitted affidavits of two physicians who Management Defendants represented to Plaintiffs as having prescribed CPT and J-Techs tests. (*Id.* ¶ 62, Ex. F, Ex. G.) In the affidavits, however, these physicians deny having prescribed, or having knowledge of, these tests. (*Id.* ¶ 62, Ex. F, Ex. G.)

# DISCUSSION

## I. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may make a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court retired the standard set forth half a century ago in *Conley v. Gibson*, that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," in favor of the requirement that plaintiff plead enough facts to "state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. 544, 561 (2007) (quoting *Conley*, 355 U.S. 41, 45-46 (1957)). Under *Bell Atlantic*, in order to be facially plausible, a complaint cannot make merely "a formulaic recitation of the elements of a cause of action," but must allege facts that "raise a right of relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). The Second Circuit has interpreted the foregoing language to "requir[e] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*," rather than to mandate a "universal standard of heightened fact pleading." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

When material outside the complaint is "presented to and not excluded by the court, the motion must be treated as one for summary judgment . . . and all parties must be given a

5

reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). For the purposes of this rule, however, the complaint is deemed to include writings and documents attached to the complaint, referenced in the complaint, or integral to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); Fed. R. Civ. P. 10(c). A document is "integral" to the complaint where "the complaint relies heavily upon its terms and effects." *Chambers*, 282 F.3d at 153 (citations omitted). "A plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* (emphasis in original).

I. Application

　A.　Civil RICO Claims

　　1. Substantive RICO Claim Under § 1964(c)

The Palter Defendants argue that Plaintiffs' civil RICO claim should be dismissed under Rule 12(b)(6) for failure to state a claim and under Rule 9(b) for failure to plead fraud with sufficient particularity. In civil RICO suits, a plaintiff must first satisfy the elements of § 1962, the criminal RICO statute. *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 424, 439 (2d Cir. 2008). The criminal RICO statute makes it "unlawful for any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of . . . collection of unlawful debt." 18 U.S.C. § 1962(c). A plaintiff bringing a RICO claim must, therefore, establish four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Smokes-Spirits.com*, 541 F.3d at 439 (quoting *Sedima, S.P.R.L. v. Imrec*

*Co.*, 473 U.S. 479, 496 (1985)).[3] If a plaintiff clears this first hurdle, he or she can bring a civil RICO claim under § 1964(c) for damages incurred by violation of the criminal RICO statute. *See id.* (citing 18 U.S.C. § 1964(c)).

Under § 1964(c), "a plaintiff must show: (1) a substantive RICO violation under § 1962; (2) injury to the plaintiff's business or property, and (3) that such injury was by reason of the substantive RICO violation." *Id.* (internal quotation marks and citations omitted). A plaintiff must also establish both factual and proximate causation. *Id.* at 440 (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). "[P]roximate cause . . . requires that 'there be some direct relation between the injury asserted and injurious conduct alleged.'" *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, No. 04-CV-5045 (ILG), 2008 WL 4146190, at *13 (E.D.N.Y. Sept. 5, 2008) (quoting *Holmes*, 503 U.S. at 268). "[W]here mail fraud is the predicate act for a civil RICO claim . . . the proximate cause element . . . requires the plaintiff to show 'reasonable reliance.'" *State Farm Mut. Auto. Ins. Co. v. Eastern Med., P.C.*, No. 05-CV-3804 (ENV) (RML), 2008 WL 3200256, at *5 (E.D.N.Y. Aug. 5, 2008) (quoting *Bank of China, N.Y. Branch v. NBM LLC*,[4] 359 F.3d 171, 176 (2d Cir. 2004)); *Frankel v. Cole*, No. 06-CV-439 (CBA), 2007 WL 5091074, at *20 (E.D.N.Y. Apr. 20, 2007).

---

[3]  Some courts have broken-down the cause of action to seven elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, maintain an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate . . . commerce." *See Persaud v. Bode*, 04-CV-4475 (ARR), 2006 WL 1419397, at *4 (E.D.N.Y. Mar. 24, 2006) (citing *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)). However the elements are broken down, the substantive crime remains the same and is governed by § 1962.

[4]  The parties in *Bank of China* were granted certiorari to the Supreme Court on the issue of whether reasonable reliance is the proper standard for proximate causation in a civil RICO claim, 545 U.S. 1138, 1138 (2005), but they subsequently dismissed their petition, 546 U.S. 1026, 1026 (2005) (dismissing petition for certiorari under Supreme Court Rule 46.1). Therefore, proof of reasonable reliance is still required in civil RICO claims. *See, e.g.*, *Gragg v. NYS Dept. of Envtl. Conservation*, No. 97-CV-1506 (RSP), 2000 WL 246272, at *6 (N.D.N.Y. Mar. 30, 2000).

Here, the Palter Defendants argue that Plaintiffs have not sufficiently pled reasonable reliance with respect to the mail fraud RICO claim—i.e., that Plaintiffs could not have reasonably relied on the letters of medical necessity. They argue that Plaintiffs have made mere conclusory allegations of reliance. Plaintiffs, however, contend that the Palter Defendants fraudulently submitted thousands of claims which caused Plaintiffs to pay over one million dollars in unnecessary reimbursements which could not be detected as fraudulent until after a pattern of filed suspicious claims was apparent. According to Plaintiffs, they could not detect Defendants' fraud because the submissions were facially valid insurance claims authorized by physicians and submitted by a licensed medical services corporation upon which they reasonably relied.

The court agrees with Plaintiffs. On a motion to dismiss, the court cannot say definitively that an insurance company that receives thousands of insurance claims could not reasonably rely on facially valid claims submitted by a licensed professional corporation and accompanied by reports from licensed physicians. *See CPT Med. Servs.*, 2008 WL 4146190, at *13 (holding that an insurance company's allegations that it paid for "fraudulent claims" for medically unnecessary CPT Tests by "relying on mispresentations contain[ed]" in those claims satisfies the pleading requirement of reasonable reliance).

The Palter Defendants also argue that Plaintiffs' did not reasonably rely on the Palter Defendants' claims because New York's No-Fault laws provide Plaintiffs a thirty-day window to challenge suspicious claims. New York's No-Fault laws requires insurers to pay claims within "30 calendar days . . . after . . . receiv[ing] proof of claim" to encourage quick payments of claims. *See* 11 N.Y.C.R.R. §§ 65-3.2, 65-3.8(a)(1). The policy of encouraging quick payments would be harmed if an insurer were unable to recover payments made on fraudulent claims

8

merely because they could not detect the fraud within the statutory thirty-day window. *See Walton v. Lumbermens Mut. Cas. Co.*, 88 N.Y.2d 211, 214 (1996) (holding that the legislative purpose of New York's No-Fault Laws is "to establish a quick, sure and efficient system for obtaining compensation for economic loss suffered as a result of such accidents") (citations omitted). Therefore, if Plaintiffs, as alleged, reasonably relied on the Palter Defendants' submissions, such reliance would potentially excuse Plaintiffs' failure to utilize the procedures for challenging claims within the thirty-day window. *Cf. CPT Med. Servs.*, 2008 WL 4146190, at *7 (holding that an insurance company "is not precluded from bringing an action alleging fraud and unjust enrichment merely because it did not discover the defendants' alleged fraud within the thirty day claim period"). Thus, Plaintiffs have sufficiently pled reasonable reliance.

### 2. Rule 9(b) Applied to § 1964(c) Claim

The Palter Defendants also argue that Plaintiffs failed to plead these elements with sufficient particularity as required by Rule 9(b). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A RICO claim predicated on mail fraud requires a plaintiff to particularize five elements: (1) the false or misleading claims; (2) why plaintiff believes these claims were fraudulent; (3) when and where the statements were made; (4) those responsible for the statements; and (5) how the mailings fit within defendant's fraudulent scheme. *See Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) (internal quotation marks and citations omitted); *Caytas v. Maruszak*, No. 06-CV-985 (LTS), 2007 WL 2456956, at *3 (S.D.N.Y. Aug. 22, 2007). When there are multiple defendants, Rule 9(b) requires that a plaintiff allege facts specifying each defendant's contribution to the fraud. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). Thus, "the plaintiff must identify which defendant caused each allegedly fraudulent statement to be spoken, written, wired, or mailed,

and to whom the communication was made; when the communication was made; and how it advanced the fraudulent scheme." *Persaud v. Bode*, No. 04-CV-4475 (ARR), 2006 WL 1419397, at *2 (E.D.N.Y. Mar. 24, 2006) (citing *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992)). The purpose of Rule 9(b) is not to create a heavy burden for plaintiffs, but rather, to allow defendants to identify their alleged role and acts in the fraud to appropriately respond to the complaint. *See Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990) ("The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based.").

Here, the Palter Defendants argue that Plaintiffs "simply ignore th[e] requirement" of "specify[ing] each defendant's alleged participation in the fraud." (Def. Rep. Mem. at 1-3.) They contend that Plaintiffs merely have grouped the Palter Defendants with other Management Defendants and, thus, fail to particularize the specific role and acts of the Palter Defendants. Plaintiffs respond that they sufficiently pled the particular roles played by the various defendants.

Defendants' claims are without merit. Plaintiffs have alleged that the Palter Defendants, in concert with Dr. Halima, the Prescribing Physicians, and other Management Defendants submitted several thousand fraudulent claims by mail for medically unnecessary tests and services over the course of several years to take advantage of New York's No-Fault Laws. Plaintiffs also allege that the Palter Defendants, who are not physicians, used Dr. Halima as a cover to operate the professional corporation. According to Plaintiffs, the Palter Defendants and other Management Defendants were the true managers and owners of the professional corporations that ordered, performed, wrote reports for, and billed Plaintiffs for diagnostic tests that were known by the Palter Defendants to be medically unnecessary. In addition, Plaintiffs have presented a sample of 916 allegedly fraudulent claims submitted by the Palter Defendants

to Plaintiffs. These allegations sufficiently set forth the role of the Palter Defendants and the acts of fraud they are alleged to have committed. *See CPT Med. Servs.*, 2008 WL 4146190, at *11 (holding allegations nearly identical to those at issue here were "sufficient to explain how [the non-medical professional defendants] participated in the operation or management of the enterprises"). Moreover, the conduct Plaintiffs allege the Palter Defendants to have committed is exactly the sort of conduct sought to be discouraged by the requirement that only physicians own and operate medical professional corporations. *See Mallela*, 4 N.Y.3d at 320 n.2. Thus, requiring Plaintiffs to plead with more particularity would not further any of the policy goals of Rule 9(b). The court thus finds that the Plaintiffs have pled a civil RICO claim predicated on mail fraud with sufficient particularity as required by Rule 9(b).

### 3. Conspiracy RICO Claim Under § 1964(d)

The Palter Defendants also argue that Plaintiffs' conspiracy RICO claim under § 1964(d) must fail along with its substantive RICO claim. *See, e.g.*, *Purgess v. Sharrock*, 806 F. Supp. 1102, 1110, n. 9 (S.D.N.Y. 1992) ("Dismissal of plaintiff's substantive RICO claim . . . mandates dismissal of the conspiracy to commit RICO claim . . . as well."). However, since the court finds that Plaintiffs properly pled a civil RICO claim under § 1964(c), the Palter Defendants' argument that Plaintiffs' RICO conspiracy claim must fail as well is denied as moot.

### 4. Statute of Limitations

The Palter Defendants argue that Plaintiffs' RICO claims are barred, in part, by the applicable statute of limitations. Civil RICO claims are subject to a four-year statute of limitations that "begins to run when the plaintiff discovers or should have discovered the RICO injury." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998) (citations omitted). Here, Plaintiffs filed their complaint on March 23, 2006. Thus, if Plaintiffs knew or should have known of the alleged fraud before March 23, 2002, their claims with respect to any

bills submitted prior to that date would be barred. As discussed above, the court finds plausible Plaintiffs' argument that they could not discover the Defendants' fraudulent scheme until a pattern of fraudulent claims developed. Further, at this point in the dispute, the Court cannot say when Plaintiffs knew or should have known of the alleged fraud. *See CPT Med. Servs.*, 2008 WL 4146190, at *7.

## B. New York Fraud Claim

The Palter Defendants argue that Plaintiffs' fraud claim under New York law is flawed for four reasons: (1) it is barred by case law; (2) it fails to allege reasonable reliance and proximate cause; (3) it is not claimed with particularity as required by Rule 9(b); and (4) it is time-barred. "The [four] elements of fraud under New York law are: (1) a misrepresentation or a material omission of material fact which was false and known by defendant to be false, (2) made for the purpose of inducing the plaintiff to rely on it, and (3) justifiably relied upon by the plaintiff, (4) who then suffered an injury as a result of such reliance." *Smokes-Spirits.com*, 541 F.3d at 454 (citing *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)).

The Palter Defendants contend that New York case law bars Plaintiffs' fraud claim based on the recent holding by New York's Civil Court in *Tahir v. State Farm Mut. Auto. Ins. Co.*, 814 N.Y.S.2d 507 (N.Y. Civ. Ct. 2006). The court disagrees and finds this decision by a lower state court distinguishable from the case at bar. In *Tahir*, the plaintiff medical services provider sued an insurance company because the insurance company denied payments under New York's No-Fault Laws for CPT and nerve conduction threshold tests. *Id.* at 509. The insurance company alleged that the tests were medically unnecessary and, thus, fraudulent, because they were not compensable under Medicare. *Id.* Medicare's decision not to cover the tests was the insurer's only reason both for rejecting the claims and for alleging fraud. *Id.* The court in *Tahir*, however,

held that Medicare's standard by itself was an inadequate basis for rejecting claims and alleging fraud. *Id.* at 513.

In the instant matter, Plaintiffs have not relied solely on Medicare's standard. For example, Plaintiffs point to two physicians who allegedly prescribed CPT tests but in affidavits deny ever prescribing or referring patients for these tests. In addition, Plaintiffs allege that the Palter Defendants, unlike the plaintiffs in *Tahir*, are nonphysicians illegally operating a medical profession corporation to take advantage of New York's No-Fault Laws. *See id.* at 511 n.3 (holding that if the plaintiffs were "independent contractors . . . [they] would not be a provider within the meaning of the insurance regulation" and thus would be ineligible for payments) (internal quotation marks and citations omitted); *see also Walton*, 88 N.Y.2d at 214 (discussing the policy considerations for preclusion of nonphysicians). Therefore, the court finds that New York law does not bar Plaintiffs' fraud claim.

In addition, the Palter Defendants contend that Plaintiffs have not pled reasonable reliance and proximate causation as required for fraud claims under New York law. However, as discussed above with respect to their civil RICO claims, Plaintiffs have sufficiently pled reasonable reliance. *See CPT Med. Servs.*, 2008 WL 4146190, at *16 (holding that a civil RICO claim with allegations nearly identical to those here met the requirements for pleading a common law fraud claim). The court, therefore, finds that Plaintiffs have also sufficiently pled reasonable reliance and proximate causation for their fraud claim under New York law.

The Palter Defendants finally argue that Plaintiffs' fraud claim is essentially a breach of contract claim and, as such, must be litigated under contract law. Under New York law, "[i]t is well settled that no cause of action to recover damages for fraud arises when the only fraud charged relates to a breach of contract." *Ewil Indust., Inc. v. Stroba Instrs. Corp.*, 131 N.Y.S.2d

233, 233 (Sup. Ct. N.Y. Co. 1987). However, "the same conduct constituting the breach of a contract obligation may also constitute the breach of a duty arising out of a relationship created by the contract but independent of the contract itself." *La Barte v. Seneca Res. Corp.*, 285 A.D.2d 974, 977 (4th Dep't 2001) (holding that a claim for a breach of fiduciary duty may be "separate and distinct from . . . [a] contractual relationship" between the parties). A fraud claim is distinct from a contract claim when there are: (1) distinct legal duties, (2) fraud "collateral or extraneous to the contract" or (3) "special damages" caused by the fraud and not "[]recoverable as contract damages." *Textiles Network Ltd. v. DMC Enters., LLC*, No. 07-CV-393 (DLC), 2007 WL 2460767, at *3 (S.D.N.Y. Aug. 21, 2007); *Metro Life Ins. Co. v. Noble Lowndes Int'l*, 84 N.Y.2d 430, 435 (1994) (holding that one of the differences between contract and tort claims is the availability of enhanced damages in the latter for intentional conduct).

Here, Plaintiffs maintain that there was no contract between them and the Palter Defendants and, notably, that their fraud claims are distinct claims, independent of any potential contract dispute. The court agrees. Even if the court were to find that Plaintiffs have valid claims for breach of contract, it would not change the fact that Plaintiffs have pled distinct fraud claims that go well beyond contract claims. *See Standardbred Owners Ass'n v. Roosevelt Raceway Assocs., L.P.*, 985 F.2d 102, 105 (2d Cir. 1993) (holding that "the existence of . . . contractual 'rights' does not forclose the plaintiffs' RICO fraud claims"); *U.S. Fire Ins. Co. v. United Limo. Serv., Inc.*, 328 F. Supp. 2d 450, 454 (S.D.N.Y. 2004) ("The type of activity that gives rise to RICO claims also frequently gives rise to lesser state law claims, such as fraud or unjust enrichment."). The fraudulent conduct allegedly committed by the Palter Defendants—the operation of a medical professional corporation by nonphysicians to charge insurers for medically unnecessary diagnostic tests—is extraneous to any contract between Plaintiffs and the

Palter Defendants because it does not concern disputes over a contractual obligation between the parties. Instead, Plaintiffs' claims sound "in tort, not in contract." *See Standardbred*, 985 F.2d at 105. Thus, Plaintiffs' fraud claims survive.

### C. New York Unjust Enrichment Claim

The Palter Defendants assert that, much like Plaintiffs' fraud claim, Plaintiffs' unjust enrichment claim is governed by a contract and, thus, is limited to a breach of contract claim. "The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Berry v. Deutsche Bank Trust Co. Ams.*, No. 07-CV-7634 (WHP), 2008 WL 4694968, at *6 (S.D.N.Y. Oct. 21, 2008) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)). Unjust enrichment claims, however, are inapplicable when "a valid and enforceable written contract govern[s] . . . the same subject matter. *See Shah v. Micro Connections Inc.*, 286 A.D.2d 433, 433-34 (2d Dep't 2001).

Here, as discussed above, Plaintiffs sufficiently pled a common law fraud claim. Accordingly, whether or not Plaintiffs have a valid breach of contract claim is immaterial. *See CPT Med. Servs.*, 2008 WL 4146190, at *16 (permitting under circumstances similar to those alleged here both fraud and unjust enrichment claims to proceed simultaneously with a civil RICO claim); *see also United Limo. Serv., Inc.*, 328 F. Supp. 2d at 454 ("The type of activity that gives rise to RICO claims also frequently gives rise to lesser state law claims, such as fraud or unjust enrichment."). Moreover, even if Plaintiffs are unable to prove their civil RICO claims, the court cannot, at this stage in the litigation, hold that there are no set of facts that would entitle Plaintiffs to restitution under an unjust enrichment theory. *See Mfrs. Hanover Trust Co. v. Chem. Bank*, 160 A.D.2d 113, 117 (1st Dep't 1990) (holding that "equity and good conscience"

might require that a party be entitled to recover payments from "one who is not entitled to it . . . even if the mistake is due to negligence of the payor"). Therefore, the Court denies the Palter Defendants' motion to dismiss Plaintiffs' unjust enrichment claim is denied.

## CONCLUSION

For all the reasons stated above, the Palter Defendants' motion to dismiss is denied in its entirety.

SO ORDERED

DATED:   Brooklyn, New York
         March 19, 2009

_____/s/_____
Dora L. Irizarry
United States District Judge